# ADDISON COUNTY.

### January Term, 1843.

Present Hon. STEPHEN ROYCE,
     "     ISAAC F. REDFIELD,
     "     MILO L. BENNETT,   } *Assistant Justices.*
     "     WILLIAM HEBARD,

---

### Town of Starksboro v. Town of Hinesburgh.

The health ordinarily enjoyed by men of health, and the physical ability ordinarily possessed by men of sound bodies, constitute the "healthy and able bodied," within the meaning of the first section of the act of 1797, relating to legal settlement; and this, notwithstanding there may have been a casual and temporary illness, or bodily unsoundness, producing an occasional and temporary effect upon the capacity to gain a livelihood by bodily labor.

The deposition of a witness was taken, by reason of his disability to appear in court. He, nevertheless, appeared and testified on the trial. *Held,* that the deposition might be used as evidence in chief, in a subsequent trial of the same cause, the witness having, in the mean time, died; and that the admissible character of the deposition was not affected by a sworn repetition of the testimony the witness had given in court on the former trial.

This was an appeal from an order of removal by the town of Starksboro to the town of Hinesburgh, of one Lyman Bostwick and Rhoda Bostwick, his wife, made on the      day of May, A. D. 1840. Plea, denying the settlement of the pauper in Hinesburgh, and trial by jury.

The plaintiff claimed the settlement of the pauper, Lyman Bostwick, in Hinesburgh, under the last clause of the first section of the act of 1797, on the ground that he resided there the term of one year, or more, while said act was in force, and that he was at that time, "a healthy, able bodied person, and of quiet and peaceable behavior." The appeal was entered in the county court, at the June term, 1840, and the cause was tried at the December term of that year. A new trial having been granted, it appeared on the subsequent

trial, that a short time before the said December term, the defendant took the deposition of said Lyman Bostwick to be read in the trial, for the reason that, by age and bodily infirmity he was rendered unable to attend court; that the plaintiff was notified, and attended, and cross examined the witness, and that the deposition was duly taken and certified, and opened in court.

It also appeared that, at the time of the trial of the cause at the said December term, the witness was in such a state of bodily infirmity, as to render the deposition admissible, had the witness not been produced.

It also appeared that the plaintiff took the deposition of said Bostwick, about the same time, to be also used on the trial of the cause; and that, on notice, the defendant appeared at the taking, and cross examined the witness.

It appeared, also, that, at the trial of the cause, at said December term, Bostwick was produced by the plaintiff as a witness, and testified; and that after he had been examined in chief, and without any cross examination, the defendant's counsel insisted that, as it appeared from his testimony, that Hinesburgh was not the town in which he first resided one full year, he could not have gained a settlement there, and that the defendant was not required to go into a defence; but, that if the court should decide otherwise, then the defendant claimed to be allowed to go into evidence by way of defence, and to cross examine the witness. The cross examination was suspended, with this conditional leave of the court, and the court decided that the evidence was not sufficient to sustain the order of removal, and thereupon directed a verdict for the defendant.

The plaintiff, at the second trial, offered to prove what the said Bostwick testified in the former trial of the cause—it appearing that he had, in the mean time, deceased—to which the defendant objected, on the ground that the deposition taken by the plaintiff was the best evidence, and that the plaintiff was bound to produce it—notice having been given by defendant to plaintiff, before the session of the court, to produce the same on trial. The court overruled the objection, and admitted the evidence, which tended to show that Bostwick moved into Hinesburgh in 1797 or 1798, and resi-

ded there till March, 1802, and that, during that time, he was a healthy, able bodied man, with the exception of a slight rheumatism, which occasionally affected him. The plaintiff also gave evidence tending to show, that the pauper, during his residence in Hinesburgh, supported himself by his labor, and was of quiet and peaceable behavior.

The defendant introduced testimony, tending to show that Bostwick, during his said residence in Hinesburgh, was not a healthy, able bodied man—that during his whole residence there he was afflicted with a lameness in the hip, which rendered him unable to labor, except at some kinds of light work, and often, entirely disabled him ; that said lameness was of a permanent character, and increased until it terminated several years before his death, in an entire stiffness of the hip joints, and disabled him so that he could walk only with crutches ; and that he died of said disease.

The defendant also offered in evidence the said deposition of Bostwick, taken by the defendant, which was objected to by the plaintiff, but admitted by the court, as evidence only so far as it was inconsistent with, and went to impeach the testimony of Bostwick, as given in evidence by the plaintiff, but not as evidence in chief, as the defendant claimed that it was entitled to be received.

The counsel for the defendant requested the court to charge the jury—

1. That, in order to entitle the plaintiff to a verdict, the plaintiff must show that the pauper resided in Hinesburgh, while the statute of 1797 was in force, one full year, and that, during such year's residence, he was a healthy, able bodied man ; and that the burden of proof, as to his being such healthy, able bodied man, was upon the plaintiff.

2. That, in order to constitute the pauper a healthy, able bodied man, within the meaning of the statute of 1797, he must, during such year's residence, have been in full strength, enjoying continued health, uninterrupted by disease.

3. That if the jury should find that the pauper, during such year's residence, had a disease or lameness upon him which, at periods, rendered him unable to labor, then he was not a healthy, able bodied person, within the meaning of the statute.

4. That if they should find that during such residence, he

had a disease, lameness, or infirmity, upon him, of a permanent character, and which but occasionally rendered him less able to labor, then, he was not a healthy, able bodied person, within the meaning of the statute, even if they should find that, taking the whole period of such year's residence, he performed as much labor as healthy, able bodied men in general.

5. That, if they should find that, during such residence, he was able to perform, and did perform, as much labor as healthy, able bodied men, in general, and this, too, without interruption by sickness or disease, and also find that, during this period he had upon him a lameness or chronic disease, which, from its nature and tendency, would be likely to render the town more liable to become chargable with his support, or would be likely to increase, and ultimately disable him, or render him of less ability to gain a livelihood by labor, or did so terminate, then he was not, at the period of such residence, a healthy, able bodied person, within the meaning of the statute, although, at the particular period of such residence, he was not thereby rendered the less able, either in point of health or physical ability, to labor, or thereby gain a livelihood.

But the court instructed the jury that, if Bostwick resided in Hinesburgh for the term of one full year, while the portion, in question, of the act of 1797 was in force, and in the ordinary health which is commonly enjoyed by others in health, and possessed of the physical and bodily ability which men of sound bodies ordinarily possess, he would have gained a settlement under that act ; and that this effect would not be prevented, though the pauper might, in the course of such year, have a casual and temporary illness, or bodily unsoundness, which produced an occasional and temporary effect upon the character and capacity of the pauper to gain a livelihood by his bodily exertions ; but if they should find, on the other hand, that the pauper was, at any time during such year's residence, laboring under some permanent disease or disability of his bodily powers, which eventuated in substantially and materially diminishing his capacity to acquire, at any subsequent time, a support for himself and family, in consequence of it, he was not that healthy able

bodied person, which the law required, and could not gain a settlement in Hinesburgh by the year's residence.

The court further charged the jury, that the deposition of Bostwick, was not to be regarded as evidence in chief, and as proving the facts therein testified to, but was to be taken as evidence, only so far as it was inconsistent with, and tended to impeach the testimony of the same witness, as given at the previous trial, and now testified to. The jury returned a verdict that the pauper was duly removed.

To all which decisions, and charge of the court, and refusal to charge as requested, the defendant excepted.

*Hyde & Peck,* for the defendant.

I. The deposition of Lyman Bostwick, was admissible as evidence in chief, as a deposition under the statute, having been regularly taken, for a cause specified in the statute—the disability of the witness, which continued up to his death. This event did not destroy its admissibility. The production of the witness by the plaintiff, when he was too infirm to be required to attend, cannot prejudice the defendant. It did not *destroy,* but only *suspended,* his right to use the deposition. The witness being dead, the deposition, with the aid of the statute to show it was judicially taken, is admissible at common law. Judicial examinations by public-officers are also admissible, when the party had no notice or opportunity to cross-examine the witnesses, upon the ground that the examination being taken by a public officer, the testimony is presumed to have been fully and impartially taken. Phil. Ev. 363–68–72–76–78; 1 L. Ray. 219–22; 3 Barn. & Al. 121; 2 Bac. Ab. 625; Gil. Ev. 56; 1 Stark. Ev. 310 (7 Am. from 3 Lond. ed.) Arch. Pl. 398—(2 Am. from last Lond, Ed.) Bul. N. P. 239; *Fry* v. *Wood,* 1 Atk. 445; *Benson* v. *Clive,* 2 Strange 929; *Kinsman* v. *Crooke,* 2 L. Ray. 1166

A repetition of the testimony of a deceased witness is admissible in evidence, upon the supposition that the adverse party has either actually cross-examined the witness, or had an opportunity to do so, which he had voluntarily waived. The court having decided against the plaintiff, upon another point, upon his own showing, without any cross-examination, the testimony of the witness was incomplete, and the

defendant cannot be said to have had a legal opportunity to cross-examine.

The rule which admits parol evidence of what a deceased witness testified on a former trial, rests on the necessity of the case, and is confined to cases where the words of the deceased witness can be proved. The substance of his testimony is not admissible; and even under this strict rule courts have always considered it a dangerous species of testimony, and judges have regretted that it was ever admitted. See Lord Palmerston's case cited by Lord Kenyon, in *The King* v. *Jolliffe*, 4 T. R. 290. In *Ennis* v. *Donisthorne*, Lord Kenyon says, " he ought to recollect the very words, for the jury alone can judge of the effect of words;" See Phil. Ev. 231, n. 3; *Wilbur* v. *Selden*, 6 Cowen R. 162; *Lighter* v. *Wike*, 4 Serj. & Rawle, 203; 4 Bac. Abr. 625. In this view of the subject, the deposition was evidently the *best* evidence—which the law requires should be produced.

In the provision of the statute of 1797, which gives a settlement by one year's residence, without any other requisite, to " *every other healthy, able bodied person,*" health and physical ability, are indispensible, and constitute the very capacity of the pauper to gain a settlement. The burden of proof was on the plaintiff, as to this point, as well as on the question of residence, and the court erred in not so instructing the jury, when requested.

As to the construction of the words " *healthy, able bodied person,*" we insist that, as the residence must be continuous, so must the health and physical ability of the pauper be continuous and uninterrupted, as they are equally requisite, and without them, the pauper has no capacity to gain a settlement by residence. Statutes, relative to settlement, like penal statutes, have always been construed strictly. This construction is the more to be favored, as the period of residence is short. Any other construction would destroy all rule on the subject. *Middletown* v. *Poultney*, 2 Vt R. 437. The defendant, therefore, was entitled to a charge, agreeably to the 1st, 2d, and 3d, requests.

If a temporary illness would not prevent a settlement, yet if, " during such residence," he had a disease, lameness, or infirmity upon him of a *permanent character*, and which but

occasionally disabled him, he was not a " *healthy, able bodied person.*" Defendant was therefore entitled to a charge, agreeably to the 4th request.

If, during his residence, the pauper had a lameness or chronic disease, permanent in its character, the nature and tendency of which would be to render him likely to become chargeable, he was not a healthy, able bodied person, although it did not disable him at any time during the particular period of his residence. ' The statute looks to the security of the town beyond the period of the residence, otherwise it would have provided that any one should gain a settlement, by merely residing one year, and supporting himself. The court ought, therefore, to have charged according to the 5th request.

The charge is erroneous. That part of it, in which the court told the jury that if the pauper was " in the ordinary ' health which is commonly enjoyed by others in health, and ' possessed of the physical and bodily ability, which men of ' sound bodies ordinarily possess, he would have gained a ' settlement," is no definition of a healthy, able bodied person, and is equivalent to no charge on this point.

The charge does not give the "*permanent disease or disability*" the effect of preventing a settlement, unless it actually "*eventuated*" in diminishing the capacity of the pauper to acquire a support at a subsequent period. Under this charge, the pauper may have been under this " permanent disease or disability " during his whole residence, and yet have gained a settlement, unless it eventuated in diminishing his capacity to acquire a support at a " *subsequent time*,"—so that if he was not a healthy, abled bodied person, during such residence, yet if he recovered at the end of this period, he would have gained a settlement.

*E. D. Barber*, for the plaintiff.

I. Evidence of what a deceased witness testified on a previous trial, is admissible, on a subsequent trial. 1 Stark. Ev. 265, and n. z.; Bul. N. P. 295: 3 Taunt. 261 ; 3 Wend. 251 ; 6 Cow. 165 ; 12 Vt. R. 427.

The testimony of Bostwick, on the stand at the time it was given, was the *best testimony*, and the deposition was not then admissible. 1 Stark. Ev. 108, 261–2. If it was,

then, testimony of a higher nature than the deposition, so was a sworn repetition of it, after the death of the witness. By being admitted, subject to all the objections of the opposite party, and to a cross examination, if he chose to make any, it became testimony in the case. The deposition, though taken to be used as testimony, had never been used, and had not, of course, become testimony, and might not have become so, under the direction of the court. The claim on the part of defendant was, then, that the court should reject evidence of that which had become testimony, on the previous trial, and substitute that, as the testimony of the deceased witness, which was not testimony at the time he testified.

If it be said that the witness, on the previous trial, was not cross examined, and thereby defendant lost one of the usual tests of credibility, it is sufficient to reply, that defendant had an opportunity to cross examine, and if he neglected to do it, or for any reason waived his right to do it, he is concluded by such neglect or wavier. 1 Stark. Ev. 272–3 ; 1 M. & S. 4; Bell v. Thompson, 18 Com. Law Rep. 302.

II. Did the court err in excluding the deposition of Bostwick, excepting so far as it was inconsistent with, and tended to impeach his testimony on the stand ? If the sworn repetition of that testimony was properly admitted, the deposition was admissible only to impeach it. If that deposition might have been used as evidence in chief, might not also the deposition taken by the plaintiff? And yet that would have been inadmissible. 1 Stark. Ev. 275–8, n. t.

Again : If the deposition was admissible as evidence in chief, because taken according to the form required by statute, under the sanction of an oath, and between the same parties, and subject to the cross examination of the opposite party, upon the same principle, what a witness testified to on a previous trial, would be evidence in chief in a subsequent one, although the witness should be present and testify. But according to the authority just cited, it is admissible only for the purpose of impeaching his testimony on the subsequent trial. 1 Stark. cited above.

III. Did the court err in the charge as to what would constitute the pauper a healthy, able bodied man, within the meaning of the act of 1797 ?

The legislature intended, undoubtedly, to make health and bodily strength, and peaceable behavior, combined, as good a qualification for a settlement, as the other requisites provided by the statute ; and, inasmuch as the terms " healthy, able bodied " are relative terms, and do not, of themselves, *purport health, strength and soundness of body,* the only construction which could reasonably be given the statute, in relation to these terms, was the one given by the court below. The statute intended to exclude those, only, from gaining a settlement by this provision, who had such a disease or bodily disability upon them, at the time of their residence, as would eventually diminish, or destroy, their capacity to support themselves, and those who derived settlement from them.

ROYCE, J.—After stating the case, proceeded to deliver the opinion of the court as follows :—I shall first consider the objections taken to the charge of the judge. The question was, whether Bostwick, the pauper, acquired a settlement in Hinesburgh, under the last clause of the first section of the act of A. D. 1797, by residing in said town for one year, and being, in the language of the act, a " healthy, able-bodied person, and of quiet and peaceable behaviour." The previous parts of that section had provided various modes of gaining a settlement, all having reference to the ownership or possession of property, the payment of taxes, the discharge of town offices, or other qualifications, not necessarily involving the consideration of bodily health and strength, or of personal disposition and conduct. And it seems to have been the design of this concluding part of the section, to furnish a mode sufficiently comprehensive to embrace all other adult persons, who should demean themselves as inoffensive and wholesome citizens, and who might reasonably be expected to support themselves and families by personal labor ; and, in most employments, the appearance of, at least, ordinary health and strength could alone justify such an expectation.

It may be remarked, in reference to the qualifications necessary to satisfy the descriptive words of the statute, that, whilst on the one hand, no person should be regarded as healthy and able-bodied within the act, who, from a feeble state of

general health, or from any local disease or infirmity, was incapable of pursuing efficiently those branches of industry which the legislature had mainly in view; so on the other, those words should not receive a construction which would operate unreasonably to lessen the number of persons for whom this provision of the law was designed. In our opinion, then, it was not required that a healthy person, within the meaning of the act, should invariably continue *in health* throughout the year, nor that an able-bodied person should remain wholly exempt from those accidents which, for a time, would impair his physical energies. It must be enough if the words of the statute could fairly be predicated of the person in his usual and habitual condition. And we think the charge of the judge was substantially in accordance with this view of the subject. The jury were instructed that if the pauper, during the year of his residence in Hinesburgh under the act of A. D. 1797, was "in the ordinary health which is enjoyed by others in health, and was possessed of the physical and bodily ability which men of sound bodies ordinarily possess," he would have gained a settlement; and that this effect would not have been prevented, though he might, in the course of that year, have had "a casual and temporary illness, or bodily unsoundness, which produced an occasional and temporary effect upon his capacity to gain a livelihood by his bodily exertions." The words of the statute are here justly treated as relative expressions, having for their standard the ordinary condition of those who regard themselves, and are regarded by others, as healthy and robust persons, possessing their physical powers uninjured. It is objected, however, that the supposed exceptions to this condition of the person were not sufficiently defined and limited by the judge, and therefore may have been applied by the jury to a considerable portion of the year. But this objection loses its force when the charge is understood with a proper reference to the evidence. If any such exceptions existed during the year, they were but occasional, and of short duration. The remainder of the charge upon this part of the case might be liable to objection, considered as a rule of general application, but, as applied to this particular case, it was not calculated to lead to any improper result. It related to the question, when the rheumatic disease, of which

Addison,
*January,*
1843.

Starksboro
*v.*
Hinesburgh.

the pauper finally died, became fixed upon him as a permanent disease. And what was supposed by the judge, as to its subsequent effect, in rendering the pauper less able to support himself and family, was doubtless intended rather as a description of the actual consequences in that instance, than as a test by which to determine the importance of the fact, provided the disease did exist as a permanent one within the year. We think the jury could not have felt themselves at liberty, under the whole charge, to find a settlement in Hinesburgh, if they believed that the disease had become fixed and permanent at any time within the year.

The remaining questions to be considered relate to the admissibility and effect of certain testimony which is noted in the bill of exceptions. The deposition of Bostwick is conceded to have been regularly taken, and for sufficient cause, within the statute. It, therefore, became legal testimony, in the necessary absence of the witness. The unexpected attendance of the witness at the term for which the deposition was taken, suspended the use of it for that term, but did not affect it as competent testimony at a subsequent term, when the witness could not attend. Nor could the admissible character of this evidence be affected by a sworn repetition of the testimony which the witness had given in court. It would require the witness himself to keep out the deposition, and not merely his former testimony received at second hand. We regard both as legally admissible ; the former, as testimony expressly authorized by statute, and the latter, as a kind of evidence sanctioned by authority under such circumstances. And if admissible, like other evidence, it follows that neither could properly be treated as mere impeaching testimony, and not as evidence in chief. The distinction, in this respect, is between testimony which is admissible for the direct purpose of proving facts in the cause, and that which is not so. And as an illustration, I allude to the proof of what a witness on the stand has previously sworn in the same cause. This is but impeaching testimony ; and the reason is, that the witness being still alive, no rule of law will sanction the introduction of such proof as primary and direct evidence. It therefore cannot be received, under such circumstances, to prove any fact thus previously sworn to, but only to affect the present credit of the witness.

There is no occasion to pursue the subject farther. We are all of opinion that the decision of the county court, limiting the effect of the deposition to that of mere impeaching testimony, was erroneous; and for that cause the judgment below is reversed.